1
2
3
4
5
6                      UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8    AMERICAN RIVERS, et al.,

9                         Plaintiffs,

                                                No. C05-2086P
10         v.
                                                ORDER ON DEFENDANTS'
11   UNITED STATES DEPARTMENT OF                 MOTION TO DISMISS AND
     INTERIOR, et al.,                           PLAINTIFFS' MOTION FOR
12                                               SUMMARY JUDGMENT
                          Defendants.
13

14
15          In this action, Plaintiffs are challenging interim final rules promulgated jointly by the

16   Departments of Interior, Agriculture, and Commerce pursuant to the Energy Policy Act of 2005.

17   Plaintiffs allege that: (1) Defendants issued the rules in violation of the notice and comment

18   requirements of the Administrative Procedure Act (APA); and (2) the rules result in an impermissible

19   retroactive application of the Energy Policy Act.

20          Two dispositive motions are currently pending before the Court: (1)  Defendants' motion to

21   dismiss (Dkt. No. 22); and (2) Plaintiffs' motion for summary judgment (Dkt. No. 23).  The Court has

22   reviewed the papers and pleadings submitted by the parties and has heard oral argument on the

23   pending motions.  Being fully advised, the Court ORDERS as follows:

24          (1)      The Court GRANTS Defendants' motion to dismiss Plaintiffs' claim that Defendants

25   issued the rules in violation of the APA's notice and comment requirements.  The Court finds that the

ORDER - 1

1   rules are exempt from the APA's notice and comment requirements because they are procedural and

2   interpretative rules.  Because it is not necessary for the Court to consider matters outside the pleadings

3   in ruling on this claim, the Court dismisses this claim under Rule 12(b)(6).

4           (2)     The Court GRANTS summary judgment in favor of Defendants on Plaintiffs' claim that

5   the rules result in an impermissible retroactive application of the Energy Policy Act.  Although

6   Defendants moved for dismissal of this claim under Rule 12(b)(6), the Court has considered materials

7   outside the pleadings that were submitted by both sides in considering this claim, including materials

8   that Plaintiffs submitted in support of their motion for summary judgment.  Therefore, the Court

9   grants summary judgment to Defendants on this claim under Rule 56.

10          (3)     The Court DENIES Plaintiffs' motion for summary judgment.

11          The reasons for the Court's order are set forth below.

12                                          **Background**

13  1.      <u>The Energy Policy Act of 2005</u>

14          On August 8, 2005, the President signed into law the Energy Policy Act of 2005, Pub. L. 109-

15  58.  This litigation concerns rules that Defendants promulgated to implement Section 241 of the Act.

16  Section 241 includes three subsections.

17          First, Section 241(a) amended section 4(e) of the Federal Power Act (FPA).  Section 4(e) of

18  the FPA authorizes the Federal Energy Regulatory Commission (FERC) to issue licenses for

19  hydropower projects.  <u>See</u> 16 U.S.C. § 797(e).  Section 4(e) includes the following provisions for

20  licensing hydropower projects within "reservations:"[1]

21          [L]icenses shall be issued within any reservation only after a finding by the Commission that
            the license will not interfere or be inconsistent with the purpose for which such reservation was

22

23          [1] The FPA defines "reservations" as "national forests, tribal lands embraced within Indian
    reservations, military reservations, and other lands and interests in lands owned by the United States,
24  and withdrawn, reserved, or withheld from private appropriation and disposal under the public land
    laws; also lands and interests in lands acquired and held for any public purposes; but shall not include
25  national monuments or national parks."  16 U.S.C. § 796(2)

created or acquired, and shall be subject to and contain such conditions as the Secretary of the department under whose supervision such reservation falls shall deem necessary for the adequate protection and utilization of such reservation.

16 U.S.C. § 797(e).  The Energy Policy Act adds the following language to this provision of Section

4(e) to allow parties to license proceedings to request "trial-type" hearings to resolve disputed issues

of material fact with respect to conditions for hydropower licenses in reservations:

> The license applicant and any party to the proceeding shall be entitled to a determination on the record, after opportunity for an agency trial-type hearing of no more than 90 days, on any disputed issues of material fact with respect to such conditions.  All disputed issues of material fact raised by any party shall be determined in a single trial-type hearing to be conducted by the relevant resource agency in accordance with the regulations promulgated under this subsection and within the time frame established by the Commission for each license proceeding. Within 90 days of the date of enactment of the Energy Policy Act of 2005, the Secretaries of the Interior, Commerce, and Agriculture shall establish jointly, by rule, the procedures for such expedited trial-type hearing, including the opportunity to undertake discovery and cross-examine witnesses, in consultation with the Federal Energy Regulatory Commission.

Pub. L. 109-58, § 241(a).

Second, Section 241(b) of the Act amended Section 18 of the FPA.  Section 18 provides that

FERC shall require a hydropower licensee to construct, operate, and maintain "such fishways as may

be prescribed by the Secretary of the Interior or the Secretary of Commerce, as appropriate."  16

U.S.C. § 811.  Section 241(b) of the Energy Policy Act amended Section 18 by adding substantially

the same provisions cited above to permit agency trial-type hearings to resolve disputed issues of

material fact with respect to fishway prescriptions.

Finally, Section 241(c) of the Act added a new section 33 to the FPA.  The new section applies

in cases where the secretary of the applicable department: (1) deems a condition to be necessary under

Section 4(e) of the FPA to protect a reservation; or (2) prescribes a fishway under Section 18.  In such

cases, the new section provides that "the license applicant or any other party to the license proceeding

may propose an alternative" condition under Section 4(e) or prescription under Section 18.

The new section 33 provides that the secretary of the appropriate department must accept a

proposed alternative condition under Section 4(e) if the secretary determines, based on substantial

1  evidence, that the alternative condition provides for the adequate protection and utilization of the

2  reservation and that the proposed alternative would either (i) cost significantly less to implement; or

3  (ii) result in improved operation of the project works for electricity production.  Similarly, the

4  secretary of the appropriate department must accept a proposed alternative fishway prescription under

5  Section 18 if the secretary determines, based on substantial evidence, that the alternative fishway

6  prescription will be no less protective than the fishway initially prescribed by the secretary and that the

7  alternative would either (i) cost significantly less to implement; or (ii) result in improved operation of

8  the project works for electricity production.

9  2.       Rules Issued by Defendants

10          The Energy Policy Act of 2005 required the Departments of Interior, Agriculture, and

11  Commerce to issue rules within 90 days to establish the procedures for the "expedited trial-type

12  hearings" allowed by Sections 241(a) and (b).  On November 17, 2005, the departments jointly issued

13  interim final rules to implement Section 241.  See 70 Fed. Reg. 69804 (Nov. 17, 2005).

14          Defendants issued the interim final rules without a prior notice and comment period.

15  Defendants justified this decision on the grounds that section 553(b)(A) of the APA provides that

16  "interpretative rules and rules of agency procedure or practice, like the regulations in these interim

17  final rules, do not require a notice of proposed rulemaking."  70 Fed. Reg. at 69815.  In addition,

18  Defendants asserted that the rules fell within the "good cause" exception to the APA's notice and

19  comment requirements.  Id.   Significantly for the purposes of the pending motions, the interim final

20  rules also provided that the new rights set forth in Section 241 were "being made available

21  immediately to any license applicant or other party to a license proceeding for which the license has

22  not already been issued as of the effective date of these rules."  70 Fed. Reg. at 69805.

23  3.       Litigation in this Court

24          Plaintiffs filed this lawsuit on December 16, 2005.  Plaintiffs allege: (1) Defendants violated the

25  APA by issuing the interim final rules without prior public notice and comment; and (2) the regulations

ORDER - 4

1   should be set aside under the APA as arbitrary, capricious, or contrary to law because they result in an

2   impermissibly retroactive application of the Energy Policy Act of 2005.

3          Early in the litigation, Plaintiffs moved to compel production of the administrative record for

4   the rulemaking.  Defendants opposed this motion, arguing that Plaintiffs' complaint was subject to

5   dismissal under Rule 12(b)(6) and it would not be necessary to review the administrative record to rule

6   on such a motion.  The Court held that it could not resolve this dispute in the abstract and therefore:

7   (1) denied Plaintiffs' motion to compel; and (2) directed Defendants to file a motion to dismiss.  (Dkt.

8   No. 18).  The Court indicated that "[i]f after reviewing the motion to dismiss, the Plaintiffs continue to

9   maintain that the motion cannot be determined without the administrative record, Plaintiffs may raise

10  that issue in their response to the motion." Id. at 1-2.

11         In response to Defendants' motion to dismiss, Plaintiffs filed a combined opposition brief and

12  cross-motion for summary judgment.  In their response, Plaintiffs have not argued that the

13  administrative record is required to resolve their claims.

14                                         **Analysis**

15  1.     The APA's Notice and Comment Requirements

16         The Court first considers Plaintiffs' claim that Defendants issued the interim final rules in

17  violation of the notice and comment requirements of the APA.  With some exceptions, the APA

18  requires an agency to follow "notice and comment" procedures before issuing final rules.  These

19  requirements include: (1) publishing notice of the proposed rule-making in the Federal Register; and

20  (2) providing a period for interested persons to comment on the proposed rule, which will be

21  considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b) & (c).

22         However, the APA provides that the notice and comment requirements do not apply:

23         (A)    to interpretative rules, general statements of policy, or rules of agency organization,
                  procedure, or practice; or

24

25

ORDER - 5

1
2

> (B)     when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

3      5 U.S.C. § 553(b)(A) & (B).  The Ninth Circuit has held that exceptions to the notice and comment

4      requirements "will be 'narrowly construed and only reluctantly countenanced.'" <u>Alcaraz v. Block</u>, 746

5      F.2d 593, 612 (9th Cir. 1984).

6             Defendants argue that the final rules are exempt from the notice and comment requirements

7      because they are procedural and interpretative.  They also argue that the rules are subject to the "good

8      cause" exception to the notice and comment requirement.  However, Defendants note that it will not

9      be necessary to consider the good cause exception if the Court finds that the rules are procedural

10     and/or interpretative.  Plaintiffs argue that several provisions of the rules are neither procedural or

11     interpretative.  Plaintiffs also maintain that the "good cause" exception is not applicable.

12             A.      "Procedural" or "Interpretative" Nature of the Rules

13            In large part, the interim final rules establish procedures for conducting the agency trial-type

14     hearings permitted by the Energy Policy Act – for example, rules for pre-hearing discovery, hearing

15     procedures, and the like.  As a result, Defendants argue that most of the regulations are procedural

16     and therefore exempt from the notice and comment requirements of the APA.  To the extent the

17     regulations are not procedural, Defendants argue that the rules are interpretative, and therefore also

18     exempt from the APA's notice and comment requirements.[2]

19            The APA's notice and comment requirements apply to "substantive" or "legislative" rules.

20     The Ninth Circuit has described "substantive" rules as follows:

21
22

> For purposes of the APA, substantive rules are rules that create law.  These rules usually implement existing law, imposing general, extrastatutory obligations pursuant to authority properly delegated by Congress.

23     _____

24            [2]  The question of whether the rules are procedural or interpretative is a matter that can be
        decided as a matter of law by referring to Plaintiffs' complaint, the Energy Policy Act of 2005, the
25     challenged rules, and the legal arguments of the parties.

1    <u>Southern Cal. Edison Co. v. FERC</u>, 770 F.2d 779, 783 (9th Cir. 1985).

2        By contrast, "procedural rules" include "technical regulation of the form of agency action and

3 proceedings." <u>Id.</u> (internal quotations omitted).  The Ninth Circuit has "rejected the notion that

4 procedural rules with a substantive impact are subject to the notice and comment requirements." <u>Id.</u>

5 "Interpretative rules" are rules that "merely clarify or explain existing law or regulations and go 'to

6 what the administrative officer thinks the statute or regulation means.'" <u>Id.</u> (internal quotations

7 omitted).

8        Plaintiffs do not dispute that some of the rules are procedural.  However, Plaintiffs argue that

9 several provisions of the interim final rules cannot be considered either procedural or interpretative.

10 The Court considers Plaintiffs' arguments below.

11                 i.       <u>Applicability Provisions</u>

12        Plaintiffs first argue that the "applicability provisions" of the rules are substantive.  The

13 applicability provisions state that the rules are effective immediately and apply to pending proceedings

14 in which a final license has not been issued.  Plaintiffs contend that the applicability provisions cannot

15 be regarded as interpretative rules, arguing:

16       [I]n making the Energy Policy Act's new rights available to pending license proceedings as
          well as new ones, even though the Act clearly did no so provide, Interior did not merely

17       determine 'what the law already is.'  Rather, it made a decision that affected the substantive
          rights of the parties, a decision that should only have been made subsequent to full notice and

18       comment.

19 (Pls.' Opp. at 20) (internal citations omitted).

20        In response, Defendants note that Congress made the Energy Policy Act of 2005 effective

21 immediately and that Congress provided that the rules would be applicable to "license applicants"

22 without qualification.  Defendants argue that by applying the rules to pending license proceedings,

23 they "simply honored a statutory requirement, and therefore the provision is interpretative."  (Defs.'

24 Reply at 7).

25

ORDER - 7

The Court finds that the applicability provisions are interpretative rules and therefore exempt from the APA's notice and comment requirements.  These provisions represent Defendants' interpretation of whether Section 241 of the Energy Policy Act applies only to new license applicants or to pending license applicants.  The question of whether this interpretation would result in an impermissible retroactive application of the statute presents a different question, which is addressed Section 2 of this Order.

          ii.      <u>Standards Used by Departments To Decide Whether to Adopt Proposed Alternative Conditions or Fishway Prescriptions</u>

As discussed earlier, the Energy Policy Act established a new section 33 of the FPA.  Section 33 allows parties to a license proceeding to propose alternative conditions or fishway prescriptions to be included in hydropower licenses.  Under the new section, the secretary of the appropriate department must determine whether to accept the proposed condition or fishway prescription.  The statute provides that the secretary must make this determination "based on substantial evidence provided by the license applicant, any other party to the proceeding, or otherwise available to the Secretary." Pub. L. 109-58, § 241(c).

Section 33 specifies that the secretary must consider: (1) whether an alternative condition would provide for the adequate protection and utilization of the reservation, or whether an alternative fishway prescription would be no less protective than the fishway initially prescribed by the secretary; (2) whether the alternative will cost significantly less to implement than the condition or fishway prescription initially required by the secretary; and (3) whether the alternative will result in improved operation of the project works for electricity production compared to the condition or fishway prescription initially required by the secretary.

The interim final rules issued by Defendants describe how the secretary of the appropriate department will decide whether to accept a proposed alternative condition or fishway prescription under the new Section 33.  For example, the rules adopted by the Department of Agriculture include

sections titled "What will the Forest Service do with a proposed alternative" and "How will the Forest Service analyze a proposed alternative and formulate its modified condition." See 7 C.F.R. §§ 1.672 - 73; see also 43 C.F.R. §§ 45.72 - 73 (setting forth similar rules for Bureau of Land Management); 50 C.F.R. §§ 221.72 - 73 (setting forth similar rules for National Marine Fisheries Service).

Plaintiffs argue that these rules "describe substantive standards for deciding whether or not to adopt an alternative prescription or condition." (Pls.' Opp. at 18). In response, Defendants argue that the rules track the language of the statute and explain what factors the secretary of the appropriate department must take into account under the new law in analyzing a proposed alternative condition or prescription.

As Defendants suggest, the rules implementing Section 33 closely track the statutory requirements established by Congress. The rules describe what factors the appropriate secretary must consider under the law in analyzing a proposed alternative condition or prescription, along with a description of the procedures that will be followed in this process. The Court finds that these rules are interpretative to the extent that they describe what the statute requires, as well as procedural to the extent that they describe what procedures the departments will follow in considering alternative conditions or prescriptions. Because these rules are interpretative and procedural, they are not subject to the APA's notice and comment requirements.

iii.    Failure to Make Provisions for Commenting on Proposed Alternative
Conditions or Prescriptions in Pending Cases

Plaintiffs also suggest that the rules violate the APA's notice and comment requirements because the rules "make no provision for comment on proposed [alternative conditions or fishway prescriptions] in pending cases." (Pls.' Opp. at 18). In response, Defendants note that Plaintiffs "fail to explain or provide any authority supporting their contention that the Departments' failure to publish a regulation equates to substance and therefore can constitute a violation of the APA notice-and-

1    comment requirements." (Defs.' Reply at 8).  Defendant also note that nothing in the rules prohibits

2    anyone from submitting comments on proposed alternatives.

3         The Court agrees with Defendants.  It is difficult to conceive how the rules could violate the

4    APA's notice and comment requirements due to Defendants' failure to include certain provisions in

5    the rules.  In any case, Plaintiffs cite no authority for such a proposition.

6                   iv.    Limits on Participation in Hearings

7         Plaintiffs next suggest that the rules are substantive because "[t]hey preclude anyone who is

8    not already a party to a license proceeding from intervening in a hearing, even though the deadline for

9    intervention may have closed long in the past." (Pls.' Opp. at 18).  In response, Defendants note that

10   the statute explicitly provides that "[t]he license applicant and any party to the proceeding shall be

11   entitled" to a trial-type hearing.  Pub. L. 109-58, § 241(a) & (b).  As a result, Defendants argue that

12   this provision is interpretive because it tracks the statute's limitation of participation in hearings to

13   "parties" to the proceedings.

14        The Court agrees with Defendants that this provision is interpretative and therefore exempt

15   from the APA's notice and comment requirements.  Plaintiffs' argument goes more to the issue of

16   whether the rules are impermissibly retroactive as applied to pending license proceedings, rather than

17   to the question of whether the rules are interpretative or substantive.  The retroactivity issue is

18   addressed in Section 2 below.

19                   v.    ALJ's Powers

20        Plaintiffs also argue that the rules are substantive because they "render Administrative Law

21   Judge ("ALJ") factual decisions 'final,' removing significant regulatory authority from the agency and

22   placing it in the hands of the ALJ." (Pls.' Opp. at 18).

23        Section 241(a) and (b) of the Energy Policy Act provides that a license applicant and any party

24   to a license proceeding:

25

ORDER - 10

> [S]hall be entitled to a determination on the record, after opportunity for an agency trial-type hearing of no more than 90 days, on any disputed issues of material fact with respect to such [conditions or fishways].  All disputed issues of material fact raised by any party shall be determined in a single trial-type hearing to be conducted by the relevant resource agency . . . .

Pub. L. 109-58, §§ 241(a) and (b).

Plaintiffs appear to suggest that the rules are substantive because they provide that an ALJ will conduct the "trial-type" hearings required by the Act and that the ALJ's factual determinations would be unappealable.  As noted above, however, the Energy Policy Act explicitly provides that "[a]ll disputed issues of material fact raised by any party shall be determined in a single trial-type hearing" and makes no provision for appeals of that determination.  By making the ALJ's decision on factual issues final, it appears that the departments are simply interpreting what Congress has mandated and establishing agency procedures for fulfilling this mandate.

Plaintiffs also argue that the rules are substantive because they provide for consolidated hearings in which "an ALJ from one department will be empowered to make a final decision with respect to the factual bases of prescriptions and conditions issued by another agency."  (Pls.' Opp. at 18).  Plaintiffs argue that "[s]uch changes in the identity of the decisionmaker remove the rules from the scope of the 'procedural' rule exception."  Id.  Plaintiffs also suggest that the Energy Policy Act prohibits consolidated hearings, noting that the new law provides that the trial-type hearings are "to be conducted by the relevant resource agency."  Pub. L. 109-58, § 241(a).

To the extent the rules permit consolidated hearings, the Court regards the rules as procedural.  Much like the Federal Rules of Civil Procedure permit trial courts to consolidate related cases, the apparent purpose of this rule is to promote procedural efficiency and to help ensure that multiple ALJs are not required to hold multiple trial-type hearings on identical factual issues.  See 7 C.F.R. § 1.623, 43 C.F.R. § 45.23; 50 C.F.R. § 221.23.

1            vi.    Failure to Specify Who Has the Burden of Proof in Trial-Type Hearings

2        Finally, Plaintiffs argue that the rules are substantive because they fail to specify which party

3   will bear the burden of proof at the agency trial-type hearings.  The rules expressly leave this question

4   open, stating "[c]omments are sought on the separate question of who bears the burden of proof."  70

5   Fed. Reg. at 69813.  In a footnote in their reply brief, Plaintiffs argue that the failure to establish who

6   bears the burden of proof is a substantive rule because "it merely delegates this important decision to

7   the ALJ conducting the hearing."  (Pls.' Reply at 9 n.8).  Again, however, Plaintiffs have not provided

8   any authority to support the proposition that an agency's failure to issue a particular rule may

9   constitute a violation of the APA's notice and comment requirements.

10       B.    Good Cause Exception

11       Plaintiffs also argue that the interim final rules do not fall within the "good cause" exception to

12   the APA's notice and comment requirements.  However, because the Court finds that the rules are

13   exempt from the notice and comment requirements as procedural and interpretative rules, it is not

14   necessary to determine whether the rules would also be exempt from prior notice and comment under

15   the good cause exception.

16   2.    Retroactive Effect of Rules

17       The Court next considers Plaintiffs' claim that the rules would result in an impermissible

18   retroactive application of the Energy Policy Act because the rules apply the provisions of Section 241

19   to hydropower license proceedings that were pending at the time of the law's enactment.

20       Courts apply a two-step test to determine whether a statute's application is unlawfully

21   retroactive.  This two-step process was described as follows in Landgraf v. USI Film Products, 511

22   U.S. 244 (1994):

23       When a case implicates a federal statute enacted after the events in suit, the court's first task is
         to determine whether Congress has expressly prescribed the statute's proper reach.  If
24       Congress has done so, of course, there is no need to resort to judicial default rules.  When,
         however, the statute contains no such express command, the court must determine whether the
25       new statute would have retroactive effect, *i.e.*, whether it would impair rights a party

possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

Id. at 280.

A.    Whether Congress Expressly Prescribed Section 241's Reach

As noted above, the first step in the Landgraf test is to determine whether Congress "has expressly prescribed the statute's proper reach." Id. at 280. Here, the Court finds that Congress did not expressly prescribe whether the new law would apply to license proceedings that were pending when the statute was enacted.

As Defendants note, Congress did not specify an effective date of the Energy Policy Act. Under normal rules of statutory construction, the legislature's silence means that the new law took effect upon enactment. United States v. Shaffer, 789 F.2d 682, 686 (9th Cir. 1986) ("'In the absence of an express provision in the statue itself, an act takes effect on the date of its enactment.'"). However, the fact that the new law took effect upon enactment does not answer the question of whether Congress clearly prescribed that the law would apply to license proceedings that were pending at the time the statute was enacted. See, e.g., Landgraf, 511 U.S. at 257 (noting that "a statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date.").

Defendants argue that Congress "unambiguously mandated" that the new law would apply to any pending license proceedings. (Opening Brief at 14). To support this contention, Defendants note that Section 241 provides that the new trial-type hearings would be available to "the license applicant and any party to the proceeding." Pub. L. 109-58, § 241(a) & (b). Defendants also note that the provisions allowing parties to propose alternative conditions or fishway prescriptions applies to "the license applicant or any other party" to the proceeding. Id. § 241(c). Defendants argue that by using the term "license applicant," Congress expressly provided that the new provisions would apply to any pending license proceedings in which a license had not yet been issued.

1    For their part, Plaintiffs argue that the language of Section 241 suggests that Congress only

2  intended that the new right for trial-type hearings would apply to license proceedings initiated after the

3  statute's effective date.  For example, Plaintiffs note that Congress provided that trial-type hearings

4  would be held "within the time frame established by [FERC] for each license proceeding."  <u>Id.</u> §

5  241(a) & (b).  Plaintiffs argue that where the departments "have already issued preliminary

6  prescriptions or conditions, or where the NEPA process has already begun, it is impossible to comply

7  with the requirement as the 'time frame' that has already been 'established by the Commission' will

8  necessarily be disrupted."  (Pls.' Opp. at 10).  In response, Defendants argue that the language in the

9  statute simply means that FERC has the authority to adjust the schedule for license proceedings to

10  accommodate potential conflicts in the process as a result of the new law.

11    The Court is not persuaded by either side's arguments.  Section 241 does not include a clear,

12  express statement as to whether the provisions of the new law apply to pending license proceedings or

13  only to license proceedings initiated after the law was enacted.  Therefore, the Court must proceed to

14  the second step of the <u>Landgraf</u> analysis to determine whether applying the rules to pending license

15  proceedings would give the statute an impermissible retroactive effect.

16    B.    <u>Retroactive Effect</u>

17    Under the second step of the <u>Landgraf</u> test, "the court must determine whether the new statute

18  would have retroactive effect, <i>i.e.</i>, whether it would impair rights a party possessed when he acted,

19  increase a party's liability for past conduct, or impose new duties with respect to transactions already

20  completed."  <u>Landgraf</u>, 511 U.S. at 280.  The <u>Landgraf</u> Court noted that determining whether a

21  statute is impermissibly retroactive "is not always a simple or mechanical task."  <u>Id.</u> at 268.  The Court

22  stated:

23        A statute does not operate "retrospectively" merely because it is applied in a case arising from
          conduct antedating the statute's enactment, or upsets expectations based in prior law.  Rather,
24        the court must ask whether the new provision attaches new legal consequences to events
          completed before its enactment.  The conclusion that a particular rule operates "retroactively"
25        comes at the end of a process of judgment concerning the nature and extent of the change in

the law and the degree of connection between the operation of the new rule and a relevant past event.  Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.  However, retroactivity is a matter on which judges tend to have "sound . . . instincts[s]," and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

Id. at 269-70 (internal citations omitted).

Plaintiffs have offered several arguments to support their claim that the new rules result in an impermissibly retroactive application of Section 241.  The Court considers each argument below.[3]

### i.    Reopening "Finalized" Conditions and Prescriptions

First, Plaintiffs maintain that the new rules would have an impermissible retroactive effect because they would allow license applicants to reopen "finalized" conditions and prescriptions in pending license proceedings.  Plaintiffs note that after the Departments of Interior, Agriculture, or Commerce file conditions or prescriptions for a license application, those conditions or prescriptions must be included in any final license issued by FERC.  See, e.g., 70 Fed. Reg. at 69806 (noting that a department's "conditions and prescriptions must be incorporated by FERC into any hydropower license it issues under the FPA.").  Plaintiffs maintain that allowing license applicants to propose alternative conditions or prescriptions or to request hearings in pending proceedings in which the Departments have already filed their conditions or prescriptions will unfairly reopen previously settled issues and will attach new legal consequences to events that were completed before the Energy Policy Act was adopted.  Plaintiffs also suggest that allowing license applicants to propose alternatives or to request hearings in pending proceedings will require Plaintiffs to "devote additional time and unanticipated resources to these processes" and will create "new burdens and disabilities with respect to transactions already complete."  (Pls.' Opp. at 14).

---

[3]  In evaluating Plaintiffs' arguments, the Court has considered the declarations and exhibits that Plaintiffs have submitted in support of their motion for summary judgment.

1   In response, Defendants argue that conditions or prescriptions cannot be regarded as settled,

2   completed transactions until they are actually included in a final FERC license order.  Defendants

3   maintain that "[t]here is nothing final or settled about conditions and prescriptions unless and until

4   FERC makes a decision on the license application with the conditions and prescriptions" and that

5   "[e]ven mandatory conditions and prescriptions filed by the Departments have no legal force or effect

6   until FERC makes a decision on the application."  (Defs.' Reply at 18).  Defendants note that after

7   conditions or prescriptions are filed by the Departments, FERC may still decide not to issue a license.

8   See, e.g., Escondido Mut. Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 778 n.20

9   (1984).  In addition, Defendants maintain that conditions and prescriptions may be amended before a

10  license issues if new information comes to light.

11       In essence, Plaintiffs argue that before the Energy Policy Act was adopted, they could expect

12  that once the Departments filed conditions or prescriptions for pending hydropower license

13  applications, those conditions or prescriptions would not be subject to modification and would be

14  included in any final license issued by FERC.  However, a statute does not operate retroactively

15  "merely because it . . . upsets expectations based in prior law."  Landgraf, 511 U.S. at 269.  Instead,

16  the court must consider "whether the new provision attaches new legal consequences to events

17  completed before its enactment," taking into account "familiar considerations of fair notice, reasonable

18  reliance, and settled expectations."  Id. at 270.

19       While the Court is not unsympathetic to Plaintiffs' arguments, the Court agrees with

20  Defendants that conditions and prescriptions that have not been included in a final FERC license

21  cannot be regarded as completed events that give rise to the type of settled expectations protected

22  under Landgraf.  There is no dispute that until the conditions or prescriptions are included in a final

23  FERC license, they have no legal force or effect.  Applying the provisions of Section 241 to pending

24  proceedings in which conditions or prescriptions have already been filed will not increase Plaintiffs'

25  liability for past actions, nor will these provisions impair any vested rights.  Plaintiffs suggest that the

ORDER - 16

1    rules will impose new duties or obligations on them.  However, as Defendants note, the rules "do not

2    compel Plaintiffs to request a hearing, to intervene in a hearing, to submit an alternative, or to do

3    anything else." (Defs.' Opp at 19).  Although Plaintiffs may choose to devote additional time and

4    resources to license proceedings as a result of the rules, "regulations are not retroactive merely

5    because they require a change in existing practices." American Mining Cong. v. EPA, 965 F.2d 759,

6    770 (9th Cir. 1992).

7                    ii      New Rights

8            Plaintiffs also argue that the rules cannot be permissibly applied to pending license proceedings

9    because the rules give "a party in a pending proceeding a new right that previously had not been

10   available that prejudices the rights of other parties." (Pls.' Opp. at 14).  Plaintiffs suggest that the

11   rules are unlawfully retroactive because they "adversely affected the resource agencies' and

12   intervenors' 'prospects for success' in achieving their goals." Id. at 15.  Plaintiffs also assert that

13   "courts have – without exception – prohibited statutes from operating to give parties new rights, or

14   close off others, in an ongoing adjudicative proceeding." (Pls.' Reply at 6).

15           As Defendants note, however, the rules provide that any party to a pending license proceeding

16   may request a hearing or propose an alternative condition or prescription.  Because the rules do not

17   provide one party with rights that are unavailable to other parties, the rules on their face do not appear

18   to prejudice only one side in pending proceedings.

19           More fundamentally, Plaintiffs' contention that a statute may never operate to "give parties

20   new rights, or close off others, in an ongoing adjudicative proceeding" is an overstatement.  This point

21   is illustrated by Southwest Center for Biological Diversity v. United States Department of Agriculture,

22   314 F.3d 1060 (9th Cir. 2002).  In that case, the plaintiff filed suit under the Freedom of Information

23   Act (FOIA) to obtain information from the Department of Agriculture.  While the lawsuit was

24   pending, Congress enacted a statute that gave the agency the right to withhold some of the

25   information sought by the plaintiff.  Applying the new law to the pending proceeding, the district court

ORDER - 17

1    denied the plaintiff's FOIA request.  The Ninth Circuit affirmed the district court's ruling, noting that

2    "[s]urely the [plaintiff's] expectation of success in its litigation is not the kind of settled expectation"

3    protected by <u>Landgraf</u>.  <u>Id.</u> at 1062 n. 1.  Similarly, the Court does not regard Plaintiffs' concerns that

4    the rules may reduce their prospects of success in ongoing license proceedings to be the type of

5    "settled expectation" protected by <u>Landgraf</u>.

6                        iii.      <u>Effect on Intervention Decisions</u>

7            Plaintiffs also argue that the rules are impermissibly retroactive because they attach a new legal

8    consequence to their earlier decisions not to intervene in certain hydropower license proceedings.

9    Plaintiffs note that "under the rules, unless an entity is already a party to a license proceeding, it cannot

10   intervene in a request for a hearing" to resolve issues of disputed fact with respect to conditions or

11   prescriptions.  Plaintiffs argue that "[a]pplied retroactively . . . this rule can significantly affect a

12   party's rights long after the opportunity to intervene has passed.  Parties may well have made different

13   decisions with respect to intervention had they known that they would be barred from participation at

14   a later critical stage of the process."  (Pls.' Opp. at 15).

15           Section 241 and the rules issued by Defendants provide: (1) the license applicant and "any

16   party to the proceeding" may request a trial-type hearing on disputed fact issues; and (2) the license

17   applicant or "any other party to the license proceeding" may propose an alternative condition or

18   fishway prescription.  To become a "party" to a license proceeding, a person or organization must file

19   a motion to intervene.  According to Plaintiffs:

20           Any entity seeking party status must do so within a specific time after the license application is
        accepted by FERC; once that time is passed, FERC will only permit intervention upon a
21      showing of good cause.  18 C.F.R. §§ 5.23, 385.214.

22   (Pls.' Opp. at 3).

23           Plaintiffs have offered a declaration from Robbin Marks of American Rivers stating that her

24   organization "most certainly" would have intervened in two pending hydropower license proceedings

25   if they had known that the license applicants would seek to raise "major policy issues concerning the

ORDER - 18

scope of resource conditions" in the trial-type hearings authorized by Section 241.  See Marks Decl.

¶¶ 13, 15.  Ms. Marks states that American Rivers did not intervene in these proceedings earlier due to

resource constraints.  Id. ¶¶ 10, 14.

> In response, Defendants argue:
>
> Plaintiffs are well aware that failure to intervene in a license proceeding has serious consequences.  For instance, failure to intervene in the licensing proceeding also prohibits that party from seeking judicial review of any aspect of that license in court.  16 U.S.C. § 8251.  Similarly, Plaintiffs were on notice that intervention is a pre-requisite for requesting rehearing of a FERC order.  Id.  Thus, if Plaintiffs were remotely interested in the outcome of a particular license proceeding, they would have intervened.  To suggest that Plaintiffs would seek intervention in a trial-type hearing that concerns a narrow disputed fact, in a license proceeding that was not worthy of intervention in the first place simply defies logic.

(Defs.' Reply at 9-10).

The Court agrees with Defendants.  Before the Energy Policy Act was adopted, an individual

or organization faced serious legal consequences for choosing not to intervene in a license proceeding.

Perhaps most notably, failing to intervene meant that an individual or organization could not seek

judicial review of the final license order.  Although Plaintiffs have offered declarations stating that

certain organizations "most certainly" would have intervened in particular license proceedings if they

had known that license applicants would attempt to use the trial-type hearings allowed by Section 241

to resolve "major policy issues," these assertions are speculative and conclusory at best.[4]   In effect,

Plaintiffs are maintaining that their pre-Act decisions not to intervene in certain license proceedings

would have been different if trial-type hearings had been available at the time to resolve disputed

issues of fact with respect to conditions or prescriptions.  The Court cannot conclude that any party

would have reasonably relied on the unavailability of such hearings as the reason for a pre-Act decision

not to intervene in a license proceeding.

---

[4]  Speculative and conclusory evidence is not sufficient to create a genuine issue of material fact to preclude summary judgment.  See, e.g., Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995); Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982).  It should also be noted that Section 241 only authorizes trial-type hearings to resolve disputed issues of material fact, not disputed issues of policy.

1    In any case, as Plaintiffs acknowledge, FERC regulations provide that a non-party to a license

2    proceeding may seek leave to intervene on an untimely basis for good cause.  See 18 C.F.R. §

3    385.214.  If any of the Plaintiffs felt that it was essential to intervene in specific license proceedings

4    after the interim final rules were adopted, Plaintiffs had the opportunity to seek leave to intervene

5    under this provision.  There is no indication that any Plaintiffs sought to do so.

6               iv.      Impact on Settlements

7    Plaintiffs next argue that applying the rules to pending license proceedings would upset

8    settlement agreements that Plaintiffs entered into before the new law was enacted.  Specifically,

9    Plaintiffs assert:

10               [T]he regulations impact settlements that may have been executed long before the Energy
                 Policy Act was enacted.  The parties negotiated and entered into such settlements based on the
11               law at the time.  Had plaintiffs known that new rights would become available to license
                 applicants later in the process, their strategies and the agreements themselves may have been
12               different.

13   (Pls.' Opp. at 15)

14   To support this assertion, Plaintiffs offer declarations from Brett Swift of American Rivers and

15   Charlton Bonham of Trout Unlimited.  Both individuals describe settlements that their organizations

16   executed in connection with hydropower license proceedings before the new law was adopted.  Mr.

17   Swift and Mr. Bonham state that their strategies or tactics used in negotiating the settlements, or the

18   content of the agreements themselves, may have been different if they had known that the license

19   applicants could request hearings or propose alternative conditions or prescriptions under Section 241.

20   In response, Defendants argue that Plaintiffs' settlement agreements do not constitute the type

21   of "settled expectations" protected under Landgraf.  Defendants state:

22               Plaintiffs neglect to mention that settlements are not final and enforceable [until] FERC makes
                 a decision on the associated application.  Thus, Plaintiffs, like all parties to a FERC settlement,
23               run the risk that the law or conditions may change before FERC makes a decision on the
                 application.  Any party to a FERC settlement may seek to amend its provisions, or possibly
24               withdraw, prior to that decision, and parties always run the risk that FERC might decide not to
                 issue a license at all.  Needless to say, Plaintiffs cannot fairly argue that a settlement

25

ORDER - 20

agreement[], part of an application pending before FERC, constitutes a legitimate expectation that warrants protection.

(Defs.' Reply at 19-20).

Plaintiffs do not dispute Defendants' contention that the settlement agreements are not final and enforceable until FERC issues a decision on the pending license application.  Instead, Plaintiffs argue that Defendants ignore that "the very purpose of the judicial prohibition on retroactivity is to prevent the disruption caused by unannounced changes in the law" and that "[i]f everyone 'ran the risk' that the laws would change and alter the consequences of past actions, there simply would be no retroactivity jurisprudence at all."  (Pls.' Reply at 7).

However, as noted earlier, a law is not unlawfully retroactive merely because it upsets expectations based in prior law.  Landgraf, 511 U.S. at 269.  The Ninth Circuit's recent decision in Polone v. Commissioner of Internal Revenue, 449 F.3d 1041 (9th Cir. 2006), highlights this point.  In Polone, the plaintiff had settled a defamation lawsuit for $4 million and received payments in four installments of $1 million.  After the settlement agreement was executed, but before the plaintiff had received three of his four payments under the agreement, Congress enacted a new statute that treated damages in defamation actions as taxable income.  The plaintiff argued that the new tax law could not be applied to payments he received after the law changed, since the settlement of his defamation suit had been "finalized" before the enactment of the statute.  The Ninth Circuit rejected this argument. Although the Ninth Circuit noted that "the settlement contract may have been 'finalized' in the sense that both parties signed it," the court held that the agreement was not "fully consummated" at the time the change in law took effect.  Id. at 1047.

Similarly, the settlement agreements cited by Plaintiffs cannot be regarded as the type of completed transactions that are protected under Landgraf.  Plaintiffs do not dispute that these agreements are not final or enforceable until FERC issues a decision on the associated license application.  Although Plaintiffs may have adopted different negotiation strategies or bargained for

1   different agreements if they had known that Section 241 would be enacted, the same would be true of

2   the plaintiff in <u>Polone</u> – had he known that Congress would change the law regarding taxation of

3   damages in defamation actions, he most likely would have negotiated a different settlement agreement

4   as well.  This consideration is not sufficient to support a finding of retroactive effect.

5               v.      <u>Ability to Comment</u>

6           Finally, Plaintiffs argue that "under the standard FPA process, preliminary prescriptions and

7   conditions receive extensive input from license parties and the public.  Where a party proposes

8   alternatives to such terms that were final, or were close to final, however, no such opportunity is

9   afforded by the rules.  The previous hard work by plaintiffs and others in advocating for protective

10  license terms can be undone with no opportunity to be heard."  (Pls.' Opp. at 15).

11          Plaintiffs appear to be arguing that the rules are impermissibly retroactive because they may

12  allow Plaintiffs' earlier efforts to obtain protective license terms to be reversed without an opportunity

13  to be heard.  As noted earlier, however, a statute does not operate retroactively "merely because it . . .

14  upsets expectations based in prior law."  <u>Landgraf</u>, 511 U.S. at 269.  In any case, Defendants note that

15  the rules do not preclude Plaintiffs from commenting on proposed alternatives or prescriptions.

16  Indeed, Plaintiffs themselves have already submitted comments on proposed alternative conditions or

17  prescriptions.

18                              **Conclusion**

19          Consistent with the discussion above, the Court finds that Defendants did not issue the

20  challenged rules in violation of the APA's notice and comment requirements.  The Court finds that

21  these rules are exempt from the notice and comment requirements because they are procedural and

22  interpretative rules.  The Court also finds that the rules do not result in an impermissible retroactive

23  application of the Energy Policy Act.

24          Therefore, the Court: (1) GRANTS Defendants' motion to dismiss Plaintiffs' claim that

25  Defendants issued the rules in violation of the APA's notice and comment requirements; (2)

ORDER - 22

1  GRANTS summary judgment in favor of Defendants on Plaintiffs' claim that the rules result in an

2  unlawfully retroactive application of the Energy Policy Act of 2005; and (3) DENIES Plaintiffs'

3  motion for summary judgment.

4          The clerk is directed to send copies of this order to all counsel of record.

5          Dated:  October 3, 2006

6

7                                                  s/Marsha J. Pechman
                                                   Marsha J. Pechman
8                                                  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 23